# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT RAYMOND, ) | |
|       **Plaintiff,** ) | 3:12-CV-00185 JWS |
|       vs. ) | **ORDER AND OPINION** |
| GAIL FENUMIAI, ) | [Re: Motion at docket 15] |
|       **Defendant.** ) | |

## I. MOTION PRESENTED

At docket 15, defendant Gail Fenumiai ("defendant" or "Fenumiai"), who is being sued in her official capacity as the Director of the State of Alaska Division of Elections, moves to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the court's lack of subject matter jurisdiction. Alternatively, defendant moves to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the failure to state a claim for relief. Plaintiff Robert Raymond ("plaintiff" or "Raymond") opposes at docket 17, and defendant replies at docket 18. Oral argument was not requested and will not assist the court.

## II. BACKGROUND

Raymond resides outside the state of Alaska. Based on the assertions in his complaint, Raymond is a political activist who has been involved with political activities in both his home state of Wisconsin and elsewhere; he has been involved in Alaska political causes in the past and plans to be active in the future. His complaint alleges that he intends to circulate petitions in Alaska to help place initiatives, referenda, and/or recalls on ballots, but that he refrains from doing so based on the residency requirement in the statutes governing initiatives, referenda, and recalls. These statutes also require that petition booklets be certified by an affidavit of the person who circulated the booklet and that the affidavit must attest to the residency qualifications of that person. The statutes provide that petition booklets circulated by a non-resident shall not be counted.[1]

On July 25, 2012, counsel for Raymond asked the Alaska Division of Elections if the residency requirement for petition circulation would be enforced in the state. Fenumiai responded in writing to counsel that the residency requirement would be enforced.

Raymond then filed the lawsuit at issue, asking the court to invalidate those portions of the statutes that require circulators of ballot petition booklets to be Alaska residents and that the booklets be so certified. He brings this challenge based on First and Fourteenth Amendment grounds, arguing that the residency requirement prevents him, a potential initiative, referendum, or recall petition circulator, from engaging in a potent means of political activity, and thus, the requirement violates his rights and the rights of other potential non-resident petition circulators to engage in expressive association and political speech.

Defendant argues that the lawsuit must be dismissed because the complaint fails to present a "case or controversy" necessary for Article III standing. She argues

---

[1] Alaska Stat. §§ 15.45.105(3) and 15.45.130(1) (initiative); 15.45.335(3) and 15.45.360(1) (referendum); and 15.45.575(3) and 15.45.600(1) (recall).

Raymond has failed to allege a concrete or particularized injury or, at most, he only alleges a claim that is not yet ripe. Therefore, she argues that the court lacks subject matter jurisdiction, necessitating dismissal under Rule 12(b)(1). Alternatively, she argues that dismissal is proper under Rule 12(b)(6) because the complaint fails to state a claim for relief. Raymond responds by arguing that his complaint satisfies Article III's case or controversy requirement because he has self-censored his speech and political activity based on a credible threat of enforcement, which is enough when bringing a First Amendment challenge.

### III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction.[2] Where the defendant brings a facial attack on the subject matter of the district court, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor.[3] The court does not, however, accept the truth of legal conclusions cast in the form of factual allegations.

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[4] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the

---

[2] *Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

[3] *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

[4] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

absence of sufficient facts alleged under a cognizable legal theory."[5]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[6]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[7]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[9]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[11]

## IV.  DISCUSSION

Defendant asserts that the court lacks jurisdiction to consider plaintiff's complaint based the doctrines of standing and ripeness.  Under Article III of the Constitution, a federal court lacks jurisdiction unless the plaintiff presents an actual "case or controversy."[12]  To satisfy Article III's case or controversy requirement, a plaintiff must demonstrate that he has standing.  At a constitutional minimum, standing requires the

---

[5] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[6] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Id.*

[9] *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[10] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[11] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

[12] *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1152 (9th Cir. 2000).

-4-

party asserting the existence of federal court jurisdiction to establish three elements: (1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) causation; and (3) a likelihood, rather than mere speculation, that the injury will be redressed by a favorable decision."[13] In determining whether the constitutional standing requirement has been met, the court must decide if the plaintiff has "suffered sufficient injury to satisfy the 'case or controversy' requirement of Article III."[14] If the plaintiff has not, and thus the claim does not satisfy Article III's requirement, the district court lacks subject matter over the claim.

Ripeness is closely related to standing under Article III. "For a suit to be ripe within the meaning of Article III, it must present concrete legal issues, presented in actual cases, not abstractions."[15] The constitutional issues of the ripeness inquiry are "often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong."[16] Ripeness, however, is more of a question of timing and is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[17]

Whether viewed as a standing or ripeness inquiry, the issue is whether there is a case or controversy that is not abstract or hypothetical. "The difference between an abstract question and a 'case and controversy' is one of degree, of course, and is not

---

[13] *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

[14] *Id.*

[15] *Colwell v. Dep't of Health and Human Serv.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (internal quotations omitted).

[16] *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 1999).

[17] *Id.* (internal quotations omitted).

discernible by any precise test."[18] The burden of establishing ripeness and standing rests on the party asserting the claim.[19] Because the issue is raised in the context of a Rule 12(b)(1) motion, the court looks to the face of the complaint to see if the plaintiff has sufficiently alleged enough to establish standing and ripeness.

The court applies a more lenient standard in cases where a plaintiff brings a First Amendment challenge to a statute in an effort to "avoid the chilling effect of sweeping restrictions."[20] The Supreme Court has endorsed a "hold your tongue and challenge now" approach, rather than requiring a plaintiff to speak and risk the consequences.[21] Therefore, in these "pre-enforcement" cases, a plaintiff may establish the requisite injury without first suffering a direct injury from the challenged statute.[22]

Even though the standing inquiry tilts in favor of standing in these First Amendment pre-enforcement cases, a plaintiff must still show "an actual or imminent injury to a legally protected interest."[23] That is, the pre-enforcement plaintiff must demonstrate a realistic danger of injury that would result from enforcement of the statute in question and a credible threat of enforcement of the statute against him.[24] In these pre-enforcement cases, the actual or imminent injury is often self-censorship.[25]

In order to determine whether a plaintiff alleges a credible threat of adverse state action to provide the necessary standing in a pre-enforcement case, the court conducts

---

[18] *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979).

[19] *Colwell*, 558 F.3d at 1121.

[20] *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).

[21] *Id.*

[22] *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010).

[23] Id.

[24] *Lopez*, 630 F.3d at 785-86; *Bayless*, 320 F.3d at 1006.

[25] *Bayless*, 320 F.3d at 1006.

-6-

three related inquiries. First, the court considers whether the pre-enforcement plaintiff has shown a reasonable likelihood the government will enforce the challenged law against him. Second, the court considers whether the plaintiff has shown that he intends to violate the law with some degree of concreteness. Third, the court considers whether the challenged law is inapplicable to the plaintiff.[26]

The inquiry into ripeness is the same, if not slightly more focused on timing. The pre-enforcement plaintiff must demonstrate that there is a genuine threat of imminent enforcement, which includes some showing of a "concrete plan."[27]

The court concludes that even with the more lenient standard, Raymond's complaint lacks sufficient detail about his intent to violate the law and thus does not allege a realistic imminent injury or genuine threat of enforcement against him. The Constitution requires more than a hypothetical intent to violate the law; plaintiff must give details about his intended First Amendment conduct.[28] Raymond's complaint only alleges that he intends to circulate petitions for initiatives, referenda, and recall campaigns, but that he cannot because the residency requirement will be enforced and his efforts will therefore be invalidated. He provides no other details about his intended political activities or the causes or campaigns that he intends to support through the petition process. His allegations are nothing more than "some day intentions."[29] He also fails to provide any information about his past political conduct either inside or outside Alaska that would lend credibility to his general intention to be active in the petition process in Alaska.

---

[26] *Lopez,* 630 F.3d at 786.

[27] *Id.*

[28] *Id.*

[29] *Id.*

-7-

Plaintiff argues that his challenge is similar to the one presented in *Arizona Right to Life Political Action Committee v. Bayless*[30] in that he has alleged self-censorship of his political speech and activity like the plaintiff in *Bayless*. The plaintiff in that case was a political action committee with the stated purpose of providing the public with information related to abortion, and it filed a pre-enforcement lawsuit to challenge an Arizona statute that limited the timing of political advertisements. The court in *Bayless* had information about the plaintiff's political intentions and its prior political conduct, including information that the plaintiff made independent expenditures to express its support for or in opposition to a candidate for office in order to further its stated objectives. The court found that the plaintiff had modified its political speech in the past to comply with the challenged law out of fear of being subject to civil penalties, and that such modification was reasonable. The court could conclude that the plaintiff had demonstrated the harm of self-censorship and thus had standing.

But "[t]he self-censorship door to standing does not open for every plaintiff,"[31] and the court concludes that Raymond is one of those plaintiffs at this time. Given the lack of detail in Raymond's complaint, the court is not convinced plaintiff has demonstrated adequate self-censorship injury as the plaintiff did in *Bayless*. Again, he sets forth no allegations about how the challenged statutes have modified his political behavior in the past, and he makes no allegation that he has a real plan to support a political cause through the initiative, referendum, or recall process that he has put on hold because of the residency provisions in the challenged statutes. Furthermore, the court concludes Raymond has not demonstrated that he has "suffered the constitutionally recognized injury of self-censorship" because there is no allegation that he will face civil or criminal

---

[30]320 F.3d 1002 (9th Cir. 2003).

[31]*Getman*, 328 F.3d at 1095.

penalties when the residency requirements are enforced.[32] The consequence Raymond risks if the state enforces the residency requirement is invalidation of a petition and expenditure of time and money. In other words, the court concludes Raymond's decision not to engage in Alaska politics "at most can be chalked up to futility rather than First Amendment chill."[33]

In other pre-enforcement cases where standing has been found, more detail has been alleged or provided regarding the plaintiff's intent to violate the law and the reasonableness of the self-censorship. For example, in *California Pro-Life Council, Inc. v. Getman*,[34] the plaintiff demonstrated a concrete intent to violate the challenged law; it planned to spend $1000 to defeat a specific California proposition, but modified its intended conduct because it feared it would be subject to enforcement proceedings under the challenged law. The court concluded that the plaintiff had an actual and well-founded fear that the law would be enforced against it. In *LSO, Ltd. v. Stroh*,[35] the court found standing based on future injury, but it had more information about the plaintiff's past conduct and self-censorship, as well as information about how the challenged law would actually harm the plaintiff's real business interests in the future.

The court is hard-pressed to find Raymond's claimed imminent injury—self-censorship based on fear of petition invalidation—reasonable or credible. Thus, the court concludes that the case lacks constitutional justiciability, whether based on failure to allege an injury necessary for standing or based on failure to allege an injury that is ripe for consideration. Raymond's complaint is too vague and lacks that minimal level

---

[32]*Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 851 (9th cir. 2007).

[33]*Id.*

[34]328 F.3d 1088 (9th Cir. 2010).

[35]205 F.3d 1146 (9th Cir. 2000).

-9-

of detail required to elevate it from the realm of the hypothetical to an actual case or controversy.

Even if the court were to conclude that Raymond alleged the requisite injury under Article III, we would decline to exercise jurisdiction under the prudential component of the ripeness doctrine, meaning the court would conclude that there are prudential reasons for refusing to exercise jurisdiction. "In evaluating the prudential aspects of ripeness, [the court's] analysis is guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[36]

Although cases that present "pure legal question that require little factual development are more likely to be ripe,"[37] Raymond's alleged intent to violate the residency requirement in Alaska's initiative, referendum, and recall statutes is so vague and speculative, the court is not inclined to weigh in on the constitutionality of the requirement without a more credible allegation of intent. Considering the plaintiff's First Amendment challenge at this time would only entangle the court in a hypothetical disagreement.

When evaluating a claim of hardship, the court "consider[s] whether the regulation requires an immediate and significant change in plaintiffs' conduct of their affairs with serious penalties attached to noncompliance."[38] We conclude that withholding review would not impose an immediate and significant hardship on Raymond because the consequences of noncompliance with the residency requirement in the three challenged statutes is merely invalidation of any petition circulated by Raymond.

---

[36] *Thomas*, 220 F.3d at 1141.

[37] *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996).

[38] *Wolfson v. Brammer,* 616 F.3d 1045, 1060 (9th Cir. 2010).

## V. CONCLUSION

Based on the foregoing analysis, defendant's motion to dismiss at docket 15 is hereby **GRANTED,** and plaintiff's complaint is dismissed without prejudice.

DATED this 8th day of February 2013.

                                                  /s/
                                    JOHN W. SEDWICK
                        UNITED STATES DISTRICT JUDGE